1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Jack Leal,

     Petitioner

v.

Brian Williams,[1] et al.,

     Respondents

Case No. 2:21-cv-00595-JAD-VCF

**Order Denying Petition for
Habeas Relief and
Closing Case**

**[ECF No. 8]**

Petitioner Jack Leal brings this *pro se* habeas corpus petition under 28 U.S.C. § 2254 to challenge his 2017 Nevada state-court conviction after a guilty plea to multiple transactions involving fraud or deceit in the course of an enterprise and occupation.[2]  Leal was sentenced to six to fifteen years in prison and ordered to pay $757,420.00 in restitution.[3]  In the remaining grounds of his petition, Leal alleges that his plea was involuntary due to the actions of his codefendant, his plea was not intelligent due to the defective information, and his counsel had a conflict of interest in representing him and his codefendant.[4]  Having evaluated the merits of those claims, I find that habeas relief is not warranted, so I deny Leal's petition.  I do, however, grant Leal a certificate of appealability on grounds 1 and 3, and I close this case.

## Background

Leal and his codefendant, Jessica Garcia, were charged in a criminal complaint with racketeering, twelve counts of theft of $3,500 or more, and multiple transactions involving fraud

---

[1] The state corrections department's inmate-locator page states that Leal is incarcerated at Casa Grande Transitional Housing.  Brian Williams is the deputy director for that facility.  At the end of this order, I direct the clerk to substitute Brian Williams as a respondent for Respondent William Hutchings under Federal Rule of Civil Procedure 25(d).

[2] ECF No. 12-12.

[3] *Id*.  Leal's judgment of conviction was later amended, ordering Leal's restitution to be "payable jointly and severally with [his] Co-Defendant."  ECF No. 15-5.

[4] ECF No. 8.

1

or deceit in the course of an enterprise or occupation.[5]  Leal waived his preliminary hearing and signed a conflict-of-interest waiver so that his counsel could also represent Garcia.[6]  The parties entered into a plea agreement in which (1) Leal agreed to plead guilty to multiple transactions involving fraud or deceit in the course of an enterprise or occupation; (2) Leal agreed to pay restitution of $757,420.00; (3) Leal and Garcia were jointly and severally responsible for the restitution; (4) if Leal paid restitution in full at or before sentencing, "the State would not oppose the imposition of a term of probation not to exceed a term of five years, with a suspended 36-to-90 month term of imprisonment"; and (5) if Leal did not pay restitution in full at or before the time he was sentenced, "the State [would] retain the right to argue for the imposition of a term of imprisonment."[7]  A second, signed conflict-of-interest waiver was attached to the plea agreement.[8]  Leal did not pay the full restitution by the time of sentencing, and the trial court sentenced him to six to fifteen years in prison.[9]  The Nevada Court of Appeals affirmed Leal's judgment of conviction,[10] and the Nevada Supreme Court denied review.[11]

Leal filed a state petition for post-conviction relief.[12]  The state court denied Leal's petition,[13] and the Nevada Court of Appeals affirmed[14] and denied rehearing.[15]  Leal then filed two additional state petitions for post-conviction relief and two supplemental state petitions for

---

[5] ECF No. 12-4 at 4–17.

[6] *Id*. at 68–72.

[7] ECF No. 12-7 at 2–3.

[8] *Id*. at 14.

[9] ECF No. 12-11 at 22.

[10] ECF No. 14-11.

[11] ECF No. 14-15.

[12] ECF No. 14-20.

[13] ECF No. 15-6.

[14] ECF No. 16-7.

[15] ECF No. 17-19.

post-conviction relief.[16]   The state court denied these additional petitions as procedurally barred or barred by the law of the case.[17]   Leal appealed,[18] and the Nevada Court of Appeals affirmed in part and dismissed in part.[19]

Leal dispatched his federal habeas corpus petition on April 3, 2021.[20]   Respondents moved to dismiss grounds 2, 3, and 4.[21]   I granted the motion to dismiss in part, finding that ground 2 was improper in part under *Tollett v. Henderson*[22] and ground 4 was unexhausted.[23]   I instructed Leal to choose one of three options for proceeding in this case.[24]   Leal filed a declaration indicating his desire to abandon ground 4 and proceed on the exhausted grounds.[25]   I granted Leal's request and dismissed ground 4 without prejudice as unexhausted.[26]   Respondents answered the remaining grounds in Leal's petition,[27] and Leal replied.[28]

## Discussion

### A.    Review under the Antiterrorism and Effective Death Penalty Act (AEDPA)

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted

---

[16] ECF Nos. 15-28, 16-1, 17-16, 17-23.

[17] ECF No. 20-11.

[18] ECF No. 20-13.

[19] ECF No. 36-5.

[20] ECF No. 8.

[21] ECF No. 11 at 7–10.

[22] *Tollett v. Henderson*, 411 U.S. 258 (1973).

[23] ECF No. 29.

[24] *Id*.

[25] ECF No. 30.

[26] ECF No. 31.

[27] ECF No. 38.

[28] ECF No. 39.

1  in a decision that was contrary to, or involved an unreasonable application of, clearly established

2  [f]ederal law, as determined by the Supreme Court of the United States" or "resulted in a

3  decision that was based on an unreasonable determination of the facts in light of the evidence

4  presented in the [s]tate court proceeding."[29]   A state court acts contrary to clearly established

5  federal law if it applies a rule contradicting the relevant holdings or reaches a different

6  conclusion on materially indistinguishable facts;[30] it unreasonably applies clearly established

7  federal law if it engages in an objectively unreasonable application of the correct governing legal

8  rule to the facts at hand.[31]   Section 2254 does not, however, "require state courts to *extend*"

9  Supreme Court precedent "to a new context [in which] it should apply" or "license federal courts

10  to treat the failure to do so as error."[32]   The "objectively unreasonable" standard is difficult to

11  satisfy;[33] "even 'clear error' will not suffice."[34]

12          Habeas relief may be granted only if "there is no possibility [that] fairminded jurists

13  could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[35]

14  As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision

15  "was so lacking in justification that there was an error well understood and comprehended in

16  existing law beyond any possibility of fairminded disagreement."[36]   "[S]o long as 'fairminded

17  jurists could disagree' on the correctness of the state court's decision," habeas relief under

18

19  [29] 28 U.S.C. § 2254(d).

20  [30] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

21  [31] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

22  [32] *Id*. at 1705–06 (emphasis in original).

23  [33] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

24  [34] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also*
25  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court
    believes the state court's determination was incorrect but whether that determination was
26  unreasonable—a substantially higher threshold.").

27  [35] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

28  [36] *Id*. at 103.

Section 2254(d) is precluded.[37]  AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[38]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[39]  The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[40] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[41]

**B.      Evaluating Leal's claims**

     *1.      Ground 1—the plea was not voluntary due to Garcia's actions*

In ground 1, Leal alleges that his Fifth and Fourteenth Amendment rights to due process were violated because his guilty plea was involuntarily due to Garcia's threats, violence, and intimidation to get him to accept the packaged plea deal.[42]

     *a.      The factual backdrop for ground 1*

On October 24, 2016, the prosecution sent a letter to Leal's counsel making a formal settlement offer.[43]  In the letter, the prosecutor stated that "[t]he offer [was] dependent upon both Mr. Leal and Ms. Garcia accepting the . . . terms."[44]  The offer provided that, in exchange for Leal pleading guilty to one count of multiple transactions involving fraud or deceit in the course of an enterprise or occupation and being jointly and severally liable with Garcia for the

---

[37] *Id*. at 101.

[38] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[39] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[40] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[41] 28 U.S.C. § 2254(e)(1).

[42] ECF No. 8 at 3.

[43] ECF No. 17-24 at 126.

[44] *Id*.

restitution and paying that restitution prior to the entry of his plea, the prosecution "would refrain from making any recommendation as to whether Mr. Leal would be sentenced to a term of probation or imprisonment, as well as the length of any such term."[45]  Comparatively, regarding Garcia, the offer provided that, in exchange for Garcia pleading guilty to one count of multiple transactions involving fraud or deceit in the course of an enterprise or occupation and being jointly and severally liable with Leal for the restitution and paying that restitution prior to the entry of her plea, the prosecution "would not oppose the imposition of a term of probation not to exceed five years, with a suspended sentence of 36- to 90-months imprisonment."[46]  Further, "[i]n the event that Ms. Garcia satisfie[d] all of the terms of her probation and receive[d] an honorable discharge from probation, the [prosecution would] allow her to withdraw her felony plea and enter a plea of guilty to the charge of conspiracy to commit theft, a gross misdemeanor."[47]

Six months later, Leal signed a plea agreement in which he acknowledged that he was "signing th[e] agreement voluntarily, after consultation with [his] attorney, and [he was] not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement."[48]  Leal's counsel certified that Leal "[e]xecuted th[e] agreement and [would] enter all guilty pleas pursuant hereto voluntarily."[49]  At Leal's arraignment that same day, Leal stated that (1) nobody was forcing him to plead guilty, (2) he was "pleading guilty of [his] own free will," and (3) he signed the plea agreement freely and voluntarily.[50]  The trial court accepted Leal's "plea as being freely and voluntarily entered."[51]  At his sentencing hearing

---

[45] *Id*.

[46] *Id*.

[47] *Id*.

[48] ECF No. 12-7 at 7.

[49] *Id*. at 9.

[50] ECF No. 12-8 at 6, 8.

[51] *Id*. at 10.

nearly four months later, Leal noted that Garcia "ha[d] an open domestic case and [they] ha[d a] no contact" order.[52]

In its later opposition to Leal's motion for bail pending appeal, the prosecution noted that (1) Garcia was arrested in Florida on misdemeanor battery charges in March of 2017; (2) Garcia entered a guilty plea for another misdemeanor battery charge in a separate Florida case in June 2017; and (3) in yet another Florida case, Garcia was convicted on charges of battery and contempt of court.[53] At a hearing on Leal's motion for bail pending appeal, his counsel stated that, at the time of sentencing, Leal and Garcia had "cross restraining orders between them and . . . charges pending as a result of their interactions with each other."[54] The prosecution added that Leal and Garcia were estranged at the time the case was being negotiated.[55]

During his state habeas proceedings, Leal provided documentation of two domestic-violence cases filed against Garcia on June 28, 2017, and August 1, 2017;[56] both cases listed Leal as the plaintiff and were filed in Pasco County, Florida.[57] Further, Garcia's pre-sentence investigation report showed that on March 11, 2017, she was arrested in Apopka, Florida, for battery and possession of heroin.[58] Two months later she was arrested in Pasco County, Florida, for battery.[59] At Leal's state habeas hearing, his counsel argued that Garcia "ha[d] a pretty extensive history of domestic violence against [Leal] and we believe she was in league with her attorney to push [Leal] through and essentially coerce him into the deal that he made."[60]

---

[52] ECF No. 12-11 at 6.

[53] ECF No. 14-2 at 4–5.

[54] ECF No. 14-7 at 4.

[55] *Id*. at 5.

[56] ECF No. 15-3 at 37–40.

[57] *Id*.

[58] ECF No. 17-24 at 97.

[59] *Id*.

[60] ECF No. 15-4 at 4.

1                       **b.**       **Standard for validity of a guilty plea**

2           The federal constitutional guarantee of due process of law requires that a guilty plea be

3 knowing, intelligent, and voluntary.[61] "The voluntariness of [a petitioner's] plea can be

4 determined only by considering all of the relevant circumstances surrounding it."[62] Addressing

5 the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated that a "plea of

6 guilty entered by one fully aware of the direct consequences . . . must stand unless induced by

7 threats . . . , misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by

8 promises that are by their nature improper as having no proper relationship to the prosecutor's

9 business."[63] Although a plea may not be produced "by mental coercion overbearing the will of

10 the defendant," a guilty plea made following "the post-indictment accumulation of evidence

11 [that] convince[s] the defendant and his counsel that a trial is not worth the agony and expense to

12 the defendant and his family" is not "improperly compelled."[64]

13                       **c.**       **State-court determination**

14           In affirming the denial of his state post-conviction petition, the Nevada Court of Appeals

15 held that Leal's underlying claim that his guilty plea was not voluntarily entered was belied by

16 his written plea agreement and plea canvass:

17                   Second, Leal claimed his counsel was ineffective for failing to ensure his

18         guilty plea was voluntarily entered. Leal contended his codefendant used threats and physical force to coerce him into entering a guilty plea and counsel was aware

19         of those issues when Leal entered his guilty plea. In the written plea agreement, which Leal acknowledged having read and understood, Leal asserted that he

20         entered his plea voluntarily and did not act under duress or coercion. At the plea canvass, Leal acknowledged that no one forced him to plead guilty and he was

21         acting of his own free will. In light of the written plea agreement and the plea

22 [61] *See Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242

23 (1969).

24 [62] *Brady*, 397 U.S. at 749.

25 [63] *Id*. at 755; *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (noting that the longstanding "test for determining the validity of guilty pleas" is "whether the plea represents a

26 voluntary and intelligent choice among the alternative courses of action open to the defendant").

27 [64] *Brady*, 397 U.S. at 750 (reasoning that "mental coercion" is only found if the defendant "did not or could not, with the help of counsel, rationally weigh the advantages of going to trial

28 against the advantages of pleading guilty").

canvass, Leal failed to demonstrate his counsel's performance fell below an objective standard of reasonableness. Leal also failed to demonstrate a reasonable probability he would have refused to plead guilty and would have insisted on proceeding to trial had counsel performed different actions regarding entry of the guilty plea. Therefore, the district court did not err by denying this claim without conducting an evidentiary hearing.

> [FN2] To the extent Leal also asserted he should be permitted to withdraw his guilty plea due to the alleged coercion, he failed to demonstrate withdrawal of his guilty plea was necessary to correct a manifest injustice. *See* NRS 176.165.[65]

### d.    Analysis

Based on the prosecution's formal offer letter, the offer to Leal was a package deal with Garcia. And according to the terms of the formal offer, Garcia stood to benefit from pleading guilty more so than Leal. Although the allegation that Garcia threatened, intimidated, and abused Leal to get him to accept the plea deal is not illogical under these circumstances, the record lacks any credible evidence substantiating that Garcia coerced Leal. Indeed, only one of Garcia's battery charges documented in the record stemmed from events occurring before Leal signed the guilty plea agreement and entered his guilty plea: Garcia's arrest in Florida on March 11, 2017, for battery. But, importantly, there is no evidence—other than Leal's self-serving statements made after he was already sentenced—that Garcia's desire for Leal to plead guilty to the plea agreement was the catalyst for this battery incident.[66]

Moreover, although the United States Supreme Court has observed that "a prosecutor's offer during plea bargaining of adverse or lenient treatment for some person *other* than the accused . . . may pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider," it has not addressed the issue of whether such packaged

---

[65] ECF No. 16-7 at 3–4.

[66] *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting an ineffective-assistance-of-trial-counsel claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence that his attorney failed to discuss potential defenses with him"); *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) (explaining that the petitioner's "self-serving statement, made years later, that [his trial counsel] told him that 'this was not a death penalty case' is insufficient to establish that [the petitioner] was unaware of the potential of a death verdict").

plea agreements raise constitutional implications.[67]  The Ninth Circuit Court of Appeals has found that "[t]hough package deal plea agreements are not per se impermissible, they pose an additional risk of coercion not present when the defendant is dealing with the government alone."[68]  Consequently, in those circumstances, "the trial court should make a more careful examination of the voluntariness of a plea."[69]

Although the trial court did not specifically inquire while canvassing Leal about his guilty plea whether Garcia coerced his plea, the trial court acknowledged on several occasions that Garcia was Leal's codefendant.[70]  And, as the Nevada Court of Appeals reasonably noted, Leal's plea agreement provided that he was "signing th[e] agreement voluntarily" and was "not acting under duress or coercion" and Leal stated at the arraignment that nobody was forcing him to plead guilty, he was "pleading guilty of [his] own free will," and he signed the plea agreement freely and voluntarily.[71]  These representations and the trial court's finding that Leal's plea was freely and voluntarily made[72] "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."[73]  Accordingly, Leal fails to demonstrate that the trial court did not take proper acknowledgement of the package plea and did not "make a more careful examination of the voluntariness of [Leal's] plea."[74]

---

[67] *Bordenkircher v. Hayes*, 434 U.S. 357, 364 n.8 (1978) (emphasis in original).

[68] *United States v. Caro*, 997 F.2d 657, 659 (9th Cir. 1993) (acknowledging that "one defendant will be happier with the package deal than his codefendant(s); looking out for his own best interests, the lucky one may try to force his codefendant(s) into going along with the deal").

[69] *Id*.

[70] *See* ECF No. 12-8 (reciting the plea agreement, which included the provision that Leal and Garcia were jointly and severally responsibility for the restitution, and the factual details of the charge, including Garcia's participation in the crime).

[71] ECF Nos. 12-7 at 7; 12-8 at 6, 8.

[72] *Id*. at 10.

[73] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong presumption of truth.").

[74] *Caro*, 997 F.2d at 659.

1    Therefore, based on the record and "considering all of the relevant circumstances

2 surrounding" Leal's plea, Leal fails to demonstrate that his guilty plea was not voluntary,[75] so

3 the Nevada Court of Appeals' denial of this ground constituted an objectively reasonable

4 application of federal law and was not based on an unreasonable determination of the facts.  Leal

5 is not entitled to federal habeas relief for ground 1.

6         **2.      *Ground 2—plea was not intelligently entered into due to defective information***

7    In the remaining portion of ground 2, Leal alleges that his rights under the Sixth and

8 Fourteenth Amendments were violated because his guilty plea was not knowing and intelligent

9 due to the defective information that failed to identify the elements of the crime charged and how

10 he committed each element.[76]

11         **a.      *Factual background for ground 2***

12    In the information, the prosecution "inform[ed] the Court[ that] JACK LEAL and

13 JESSICA GARCIA ha[d] committed the crime(s) of one (1) count of MULTIPLE

14 TRANSACTIONS INVOLVING FRAUD OR DECEIT IN THE COURT OF AN

15 ENTERPRISE AND OCCUPATION, a category 'B' felony in violation of NRS 205.377."[77]

16 The information alleged that the acts committed by Leal and Garcia were "completed on or

17 between about March 1, 2015 and March 31, 2016, . . . within the County of Clark, State of

18 Nevada."[78]  The information then alleged that, "in and through the course of a real estate

19 enterprise known as PARCELNOMICS, LLC (d/b/a INVESTMENT DEALS)," Leal and Garcia

20 "knowingly and with the intent to defraud, obtained thousands of dollars from" eleven named

21 victims "by means of knowingly and falsely representing to said individuals that the titles to

22 properties being sold to them by the defendants were not encumbered by liens or other security

23

24

---

25 [75] *Brady*, 397 U.S. at 748–49.

26 [76] ECF No. 8 at 5.

27 [77] ECF No. 12-5 at 2.

28 [78] *Id*.

interests, intending that said individuals rely on said misrepresentations, and resulting in a loss of more than $650.00."[79]

In his plea agreement, Leal stated that (1) he understood "that by pleading guilty[, he] admit[s] the facts that support all of the elements of the offense(s)," (2) he "discussed the elements of all the original charges against [him] with [his] attorney and [he] understand[s] the nature of the charges against [him]," and (3) "the foregoing elements . . . ha[d] been thoroughly explained to [him] by [his] attorney."[80]  And Leal's counsel certified that he "fully explained to JACK LEAL the allegations contained in the charges to which guilty pleas are being entered" and that Leal was "competent and underst[ood] the charges."[81]

### b.    State-court determination

In affirming the denial of his state post-conviction petition, the Nevada Court of Appeals rejected Leal's underlying claim that his guilty plea was not intelligent because he received proper notice of the allegations against him:

> Third, Leal appeared to claim his counsel was ineffective for failing to argue that the information did not provide him with proper notice of the allegations against him. Leal contended that, as a result of the defective information, he did not enter a knowing and voluntary guilty plea.  The record demonstrates that Leal received proper notice of the allegations against him, because the information provided a plain and concise statement of the essential facts as well as a citation to the statutes discussing the crime of multiple transactions involving fraud or deceit in the course of an enterprise or occupation. *See* NRS 173.075(1); NRS 205.377(1). Leal did not demonstrate objectively reasonable counsel would have challenged the information on that basis.  Leal also failed to demonstrate a reasonable probability he would have refused to plead guilty and would have insisted on proceeding to trial had counsel argued that the information was deficient.  Therefore, the district court did not err by denying this claim without conducting an evidentiary hearing.

> [FN3] To the extent Leal also asserted he should be permitted to withdraw his guilty plea due to the allegedly improper notice of the charges against him, he failed to demonstrate withdrawal of his guilty plea was necessary to correct a manifest injustice. *See* NRS 176.165.[82]

---

[79] *Id*. at 3.

[80] ECF No. 12-7 at 4, 6–7.

[81] *Id*. at 8–9.

[82] ECF No. 16-7 at 4.

       *c.*     ***Analysis***

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."[83]  "When determining whether a defendant has received fair notice of the charges against him, we begin by analyzing the content of the information."[84]  The information must "state the elements of an offense charged with sufficient clarity to apprise a defendant of what he must be prepared to defend against."[85]

Leal was charged with multiple transactions involving fraud or deceit in the course of enterprise or occupation in violation of Nev. Rev. Stat. § 205.377(1).[86]  Leal's information cited to this statute and defined, almost verbatim, the elements of the crime.[87]  In fact, regarding the essential facts of the crime, the information explained that Leal and Garcia sold properties to eleven individuals and knowingly made false statements to those individuals that the properties were not encumbered by liens or other security interests with the intent that those individuals rely on those misrepresentations.[88]  Thus, the Nevada Court of Appeals reasonably concluded that Leal received proper notice of the allegations against him because the information stated the

---

[83] U.S. CONST. amend. VI.

[84] *Gautt v. Lewis*, 489 F.3d 993, 1003 (9th Cir. 2007).

[85] *Givens v. Housewright*, 786 F.2d 1378, 1380 (9th Cir. 1986) (citing *Russell v. United States*, 369 U.S. 749, 763–64 (1962)); *see also James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994) ("The principal purpose of the information is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense."); Nev. Rev. Stat. § 173.075(1) ("[T]he information must be a plain, concise and definite written statement of the essential facts constituting the offense charged.").

[86] ECF No. 12-5.

[87] *Compare* ECF No. 12-5 *with* Nev. Rev. Stat. § 205.377(1) ("A person shall not, in the course of an enterprise or occupation, knowingly and with the intent to defraud, engage in an act, practice or course of business or employ a device, scheme or artifice which operates or would operate as a fraud or deceit upon a person by means of a false representation or omission of a material fact that: (a) The person knows to be false or omitted; (b) The person intends another to rely on; and (c) Results in a loss to any person who relied on the false representation or omission, in at least two transactions that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents within 4 years and in which the aggregate loss or intended loss is more than $650.").

[88] ECF No. 12-5.

elements of the crime with sufficient clarity to apprise him of what he needed to defend against.[89]

Moreover, Leal stated at his arraignment that he read and understood the plea agreement, which provided, in relevant part, that he discussed the elements of the crime with his counsel, his counsel explained the elements of the crime with him, he understood the nature of the charges against him, and he admitted the facts that support the elements of the crime.[90]  And Leal's counsel certified that he fully explained the allegations contained in the charges to Leal, and Leal understood the charges.[91]  So Leal's argument that his plea was unintelligent is self-serving, contradicted by his signature on the guilty plea agreement, and contradicted by his counsel's certifications.

Therefore, based on the record, Leal fails to demonstrate that his guilty plea was not knowing and intelligent based on the allegedly defective information,[92] so the Nevada Court of Appeals' denial of this ground constituted an objectively reasonable application of federal law and was not based on an unreasonable determination of the facts.  Leal is not entitled to federal habeas relief for ground 2.

### 3.      Ground 3—counsel had a conflict of interest

In ground 3, Leal alleges that his Sixth Amendment right to the effective assistance of counsel was violated because his counsel's representation of him and Garcia was a conflict of interest.[93]

---

[89] *Givens*, 786 F.2d at 1380; *Russell*, 369 U.S. at 763–64; *James*, 24 F.3d at 24; Nev. Rev. Stat. § 173.075(1).

[90] *See* ECF Nos. 12-8 at 7; 12-7 at 4, 6–7.

[91] ECF No. 12-7 at 8–9.

[92] *Brady*, 397 U.S. at 748–49.

[93] ECF No. 8 at 7.

### a.      Factual background for ground 3

On April 10, 2017, while his case was still before the state justice court, Leal signed a conflict-of-interest waiver.[94]  That waiver stated that Leal was knowingly, intelligently, and voluntarily consenting to his counsel representing both him and Garcia despite the risk of a conflict of interest:

> I, Jack Leal, am a defendant in the case of *State of Nevada v. Jack Leal*, Case Number 16F19220B.  I acknowledge that [counsel] will be representing both myself and my co-defendant in the above-stated case.  I understand that this dual-representation may result in a conflict-of-interest wherein my attorney will be precluded from taking certain actions, including actions that would be beneficial to my individual case, because he is obligated to protect both my interests and the interests of my co-defendant simultaneously.  This possibility has been fully and completely explained to me by my attorney who has additionally provided a copy of NRPC 1.7 (attached) which delineates his responsibilities.
>
> In spite of the known risk, I hereby knowingly, intelligently, and voluntarily consent to dual representation wherein [counsel] will represent both me and my co-defendant in the above-stated case and I do hereby waive any right to later file an appeal or claim ineffective assistance of counsel based on a conflict-of-interest arising out of this dual representation.[95]

Ten days later at Leal's scheduled initial arraignment, the trial court asked Leal, "[s]o you did waive conflicts and he's okay representing both of you?"[96]  Leal responded in the affirmative.[97]  On that same day, Leal signed a second conflict-of-interest waiver.[98]  In addition to the provisions contained in the first conflict-of-interest waiver, the second conflict-of-interest waiver advised Leal to consult with independent counsel and listed more risks of joint representation:

---

[94] ECF No. 12-4 at 71.

[95] *Id*.

[96] ECF No. 12-6 at 3.

[97] *Id*.

[98] ECF No. 12-7 at 14–15.

> [Counsel] has advised me of my right to consult with independent counsel to review the potential conflict of interest posed by dual representation and the consequences of waiving the right to conflict free representation. If I choose not to seek advice of independent counsel then I expressly waive my right to do so.
>
> I hereby waive my right to withdraw my guilty plea or to a mistrial as a result of [counsel]'s potential or actual conflict of interest depriving me of my right to effective assistance of counsel arising from the dual representation.
>
> I understand that joint representation presents a number of risks including: the possibility of inconsistent pleas; factually inconsistent alibis; conflicts in testimony; difference in degree of involvement in the crime; tactical admission of evidence; the calling, cross-examination[ a]nd impeachment of witnesses; strategy in final argument; and the possibility of guilt by association.
>
> I understand that this wavier of conflict is binding throughout trial, on appeal, and in habeas proceedings.[99]

Four days later, at Leal's arraignment, the trial court noted, "I do have the conflict of interest waiver in front of me where Mr. Jack Leal is agreeing that [counsel] can also represent the co-defendant, and that there's not a conflict of interest."[100]  The trial court asked Leal if that was correct, and Leal responded, "[c]orrect."[101]

At Leal's sentencing hearing nearly four months later, the trial court noted that Leal had signed a conflict-of-interest waiver and adjudged him guilty.[102]  The prosecution then argued, *inter alia*, that Leal had "done little to nothing to make restitution in this case."[103]  Leal told the trial court that Garcia was in charge of selling a joint property for them to jointly make the restitution payment, but there were "a lot of issues going on between [him] and [Garcia]," who was not present at his sentencing hearing.[104]  Leal also explained that he and Garcia had a no-contact order, he wrongly assumed she was taking care of the sale of the house, and "the conflict

---

[99] *Id*. at 14.

[100] ECF No. 12-8 at 10.

[101] *Id*.

[102] ECF No. 12-11 at 3.

[103] *Id*. at 4.

[104] *Id*. at 5.

waiver was a mistake."[105]  Leal's counsel then addressed the court: "the dispute between [Leal and Garcia] began after the change of plea but before sentencing. . . .  I contacted the bar ethics hotline.  They recommended that I withdraw based on what's going on here.  I did.  I will make that motion."[106]  Leal's counsel explained that this issue had previously been discussed with the trial judge and the prosecution during a bench conversation prior to the start of the sentencing hearing, and he understood "that the Court's going to insist that we go forward today."[107]  The trial court asked if the conflict was Leal's belief "that Ms. Garcia was going to pay" the restitution, and Leal's counsel responded, "no, it wasn't [sic] they were paying it off.  They were supposed to be working together.  Then they had a no[-]contact order so they couldn't.  So . . . she's saying this is his fault, he's saying that's her fault."[108]  The trial court stated that the pointing of fingers regarding restitution did not amount to an antagonistic defense because "this is joint and several which means if one . . . doesn't pay the other owes the full amount."[109]

### b.      Standard for a conflict of interest

"Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."[110]  However, "[r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel."[111]  Rather, to establish a violation of the right to conflict-free counsel, the petitioner must show either that (1) in spite of an objection, the trial court "failed either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate

---

[105] *Id*. at 5–6.

[106] *Id*. at 8.

[107] *Id*.

[108] *Id*.

[109] *Id*. at 8–9.

[110] *Wood v. Georgia*, 450 U.S. 261, 271 (1981).

[111] *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978).

1  counsel,"[112] or (2) when no objection was made at trial, that an "actual conflict of interest
2  adversely affected his lawyer's performance."[113]  "[W]henever a trial court improperly requires
3  joint representation over timely objection reversal is automatic."[114]  However, prejudice is only
4  presumed when no objection has been made if the petitioner has shown that (1) his attorney
5  "actively represented conflicting interests," and (2) the "conflict of interest actually affected the
6  adequacy of [the attorney's] representation."[115]

7          Regarding the first type of violation of the right to conflict-free counsel, "a defendant
8  who objects to multiple representation must have the opportunity to show that potential conflicts
9  impermissibly imperil his right to a fair trial" and, "unless the trial court fails to afford such an
10  opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in
11  ineffective assistance of counsel."[116]  Importantly, "inquiry will enable the judge to avoid all
12  possibility of reversal by either seeking waiver or replacing a conflicted attorney."[117]  A
13  valid waiver of conflict of interest must be voluntary, knowing, and intelligent.[118]  Whether there
14  is a proper waiver is determined by the trial court and any such waiver should appear on the
15  record.[119]  Resolution of the issue of waiver depends "upon the particular facts and

---

[112] *Id*. at 484.

[113] *Cuyler v. Sullivan,* 446 U.S. 335, 348 (1980).

[114] *Holloway*, 435 U.S. at 488; *see also Mickens v. Taylor*, 535 U.S. 162, 168 (2002) (explaining that reversal is automatic "only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict").

[115] *Cuyler*, 446 U.S. at 350–51; *see also Mickens*, 535 U.S. at 171 (explaining that "'an actual conflict of interest' [means] precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties").

[116] *Id*. at 348.

[117] *Mickens*, 535 U.S. at 173; *see also Holloway*, 435 U.S. at 483 n.5 ("[A] defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests.").

[118] *Edwards v. Arizona*, 451 U.S. 477, 482 (1981).

[119] *Johnson v. Zerbst*, 304 U.S. 458, 464–65 (1938).

18

1  circumstances surrounding that case, including the background, experience, and conduct of the

2  accused."[120]

3          *c.      State-court determination*

4          In affirming Leal's judgment of conviction, the Nevada Court of Appeals held that the

5  trial court properly denied his motion to withdraw counsel due to a conflict of interest because

6  Leal did not make a proper motion, previously waived potential conflicts, and failed to

7  demonstrate an actual conflict:

8          Second, Leal argues the district court abused its discretion by denying his
9  motion to withdraw counsel due to a conflict of interest. Leal claims it was a
   conflict of interest for his counsel to represent both him and his codefendant in this
10  case. Specifically, he claims his counsel should have been able to withdraw at
   sentencing, after making an oral motion, because he and his codefendant had
11  conflicting defenses as to why they did not pay the restitution in full.

12          Leal failed to demonstrate the district court abused its discretion by denying
   his motion to withdraw counsel. First, it does not appear Leal made an appropriate
13  motion to withdraw based on the local rules. *See* EDCR 7.40(b). Second, Leal
   waived any current or potential conflicts of interest by signing two different waivers
14  regarding actual and potential conflicts of interest. *See* RPC 1.7(b); *see also Ryan
   v. Eighth Judicial Dist. Court*, 123 Nev. 419, 430, 168 P.3d 703, 710 (2007).
15  Finally, Leal failed to demonstrate there was a conflict of interest because the fact
   his codefendant did not also pay the restitution was not a defense to his breach of
16  the guilty plea agreement. *See* RPC 1.7(b)(3). Leal and his codefendant were
   jointly and severally liable for the restitution and the restitution was required to be
17  paid in full by the sentencing hearing.[121]

18          And in affirming the denial of his state post-conviction petition, the Nevada Court of

19  Appeals denied Leal's underlying claim that his counsel had a conflict of interest because Leal

20  waived any potential conflict:

21          First, Leal claimed his counsel was ineffective because counsel also
   represented Leal's codefendant and, thus, had a conflict of interest. On direct
22  appeal this court concluded Leal "waived any current or potential conflicts of
   interest by signing two different waivers regarding actual and potential conflicts of
23  interest." *Leal v. State*, Docket No. 74050-COA (Order of Affirmance, September
   11, 2018). Because he waived potential conflicts of interest stemming from
24  counsel's representation of Leal's codefendant, Leal's claim was without merit.

25

26
   _____
27  [120] *Id*. at 464.

28  [121] ECF No. 14-11 at 3.

1    Therefore, we conclude the district court did not err by denying this claim without
     conduct an evidentiary hearing.[122]

2            ***d.      Analysis***

3            The Nevada Court of Appeals reasonably concluded that Leal's right to conflict-free

4    representation was not violated.  Leal's trial counsel alerted the trial court about his concerns

5    regarding his representation of both Leal and Garcia at a bench conference at the beginning of

6    the sentencing hearing and during the sentencing hearing.  Although it is not known what was

7    discussed during the off-record bench conference, the state district court took at least some steps

8    during the sentencing hearing to ascertain the extent of the conflict, asking Leal's counsel about

9    Leal's conflict with Garcia in paying the restitution.  After Leal's counsel explained that the

10   conflict arose after Leal and Garcia's arraignment and before sentencing regarding who was

11   responsible for selling a jointly owned property to pay the required restitution, the state district

12   court appeared to determine that the risk of a violation of Leal's right to conflict-free counsel

13   was too remote to warrant the appointment of separate counsel.  Indeed, the trial court concluded

14   that Leal and Garcia were jointly and severally responsible for the restitution so pointing fingers

15   at the other regarding responsibility was futile.  Additionally, because (1) Garcia was not present

16   at the sentencing hearing and (2) Leal's counsel explained that he was going to withdraw from

17   representing Garcia, Leal's counsel was not forced to represent both Leal and Garcia after raising

18   an objection to the joint representation.  Consequently, as the Nevada Court of Appeals

19   reasonably determined, Leal failed to demonstrate that there was a conflict of interest, so the trial

20   court did not improperly require joint representation over Leal's counsel's objection.

21           Moreover, as the Nevada Court of Appeals also reasonably determined, Leal waived any

22   current or potential conflicts of interest by signing two different waivers.  In fact, Leal signed his

23   first conflict-of-interest waiver while his case was still at the state justice court, he indicated on

24   the record at his originally scheduled arraignment hearing that he was okay with counsel

25   representing him and Garcia, he signed a more detailed second conflict-of-interest waiver, he

26   indicated on the record at his rescheduled arraignment hearing that there was no conflict, and the

27   _____

28   [122] ECF No. 16-7 at 3.

trial court noted the existence of the waiver at the beginning of the sentencing hearing.  And even though Leal stated at the sentencing hearing that signing the conflict-of-interest waiver was a mistake, he did not seek to formally revoke the waiver or allege that it was invalid.

Therefore, based on the record, the Nevada Court of Appeals' denial of this ground constituted an objectively reasonable application of federal law and was not based on an unreasonable determination of the facts.  Leal is thus not entitled to federal habeas relief for ground 3.

**C.     Certificate of Appealability**

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability.  To obtain that certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."[123]  If the "district court has rejected the constitutional claims on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[124]

Applying these standards, I find that a certificate of appealability is warranted for ground 1.  Although Leal stated at his arraignment that nobody forced him to plead guilty, there was no further examination by the trial court regarding the voluntariness of his plea in light of his packaged plea deal with Garcia.[125]  Indeed, it is not apparent whether the trial court was even aware that Leal's guilty plea was a part of a packaged deal because there was no mention during Leal's arraignment that the prosecution's formal settlement offer conditioned Leal's ability to

---

[123] 28 U.S.C. § 2253(c).

[124] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).

[125] *See Caro*, 997 F.2d at 659 (explaining that "the trial court should make a more careful examination of the voluntariness of a plea" when guilty plea is a part of a packaged plea deal because packaged plea deals "pose an additional risk of coercion").

receive the benefits of the bargain on Garcia pleading guilty as well.[126]  So reasonable jurists could debate whether Leal's guilty plea was voluntary.

I also find that a certificate of appealability is warranted for ground 3.  Although Leal signed two conflict-of-interest waivers, which notably did not discuss the risks of joint representation on restitution or sentencing, he appeared to attempt to revoke the waivers at his sentencing hearing.  And, although Leal and Garcia were jointly and severally liable for the restitution, making an argument regarding responsibility for the restitution futile, counsel could still have argued for a continuance of Leal's sentencing hearing based on Garcia's actions regarding the selling of the house.  Allegedly, Garcia's actions hindered Leal's ability to pay the restitution before sentencing thereby hindering his ability to get probation.  However, counsel was still technically representing Garcia at the time of Leal's sentencing hearing and did not argue Garcia's blameworthiness in the restitution issue.  If he had attempted to minimize Leal's failures regarding the restitution by highlighting Garcia's actions, he could have been more effective in seeking a continuance of Leal's sentencing hearing to allow for the sale of the house, the payment of the restitution, and the possibility of Leal being sentenced to probation under the guilty-plea agreement.[127]  Notably, Garcia obtained new counsel after Leal's sentencing hearing, got her sentencing date continued, and paid restitution in full prior to being sentenced.[128] Finally, although the trial court asked Leal's counsel about Leal's conflict with Garcia in paying the restitution, it did not take any further steps to ascertain the risk of a conflict of interest, including discussing Leal's conflict with his counsel with Leal.[129]  Accordingly, reasonable

[126] *See* ECF No. 17-24 at 126 (formal settlement offer stating that "[t]he offer is dependent upon both Mr. Leal and Ms. Garcia accepting the . . . terms").

[127] *See Holloway*, 435 U.S. at 489–90 (explaining that "[j]oint representation of conflicting interests is suspect because of what it prevents the attorney from doing," for example, "arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another").

[128] ECF No. 37-1 at 142, 152.

[129] *See Cuyler*, 446 U.S. at 348 ("[A] defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial.").

jurists could debate whether the trial court improperly required joint representation over a timely objection.

I decline to issue a certificate of appealability for my resolution of ground 2.

## Conclusion[130]

IT IS THEREFORE ORDERED that the petition **[ECF No. 8] is DENIED**, and because reasonable jurists could find my decision to deny grounds 1 and 3 of this petition to be debatable or wrong, a **certificate of appealability is GRANTED for grounds 1 and 3 but DENIED as to ground 2.**

The Clerk of Court is directed to

- SUBSTITUTE Brian Williams for Respondent William Hutchings,
- SEAL by restricting Exhibit 118 found at ECF No. 17-24,[131]
- ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated: November 15, 2022

_____

U.S. District Judge Jennifer A. Dorsey

---

[130] Leal requests that I conduct an evidentiary hearing, ECF No. 39 at 1, but he fails to explain what evidence would be presented at such an evidentiary hearing. Furthermore, I have already determined that Leal is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect my reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *see also* 28 U.S.C. § 2254(e)(2). Thus, Leal's request for an evidentiary hearing is denied.

[131] This exhibit contains the presentence-investigation reports for both Leal and Garcia. ECF No. 17-24 at 94–105. Although the respondents did not move to seal this exhibit, having reviewed and considered these contents of the exhibit in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, I find a compelling need to protect Leal and Garcia's safety, privacy, and personal, identifying information. *See also* Nev. Rev. Stat. § 176.156(5) (stating that the PSI is "confidential and must not be made a part of any public record").